Napton, judge,
delivered the opinion of the court.
This is an action of debt brought upon the official bond of the clerk of the circuit court of St. Louis county. The breach assigned is the refusal of the clerk to issue several executions upon a judgment in favor of the plaintiffs in interest, at the same time directed to different counties, There was a demurrer to the declaration which was sustained.
The only question is, whether the clerk was guilty of a breach of official duty in refusing to issue more than one execution at the same time to different counties.
Our statute contains no positive regulations on this subject. There is no provision in the execution law which gives any directions as to the number of executions a party may have upon his judgment, either directed to the same county or to different counties. The absurdity of issuing two executions of the same kind to the same officers, at the same time, sufficiently accounts for the absence of any explicit denial of such a practice : but the act is equally silent in relation to the right of issuing several executions directed to different counties. A critical examination of all its provisions, will scarcely afford any plausible argument on the one or the other side of the question. The law on this subject has been nearly the same from the organization of our territorial government. The first section of the act, as it now stands, declares that the party in whose favor a judgment has been rendered, shall have an execution in conformity with the judgment. The act of Oct. 30th, 1810, is *266 almost in the same language. “ It shall be the duty of the clerk of every court of record, to issue a writ of execution in conformity with the judgment rendered.” Geyer’s Dig. p. 265. The eighth section of the present law says that executions issued upon -any judgment may be directed to and executed in any county in this State. The act of July 3d, 1807, authorized the court of common pleas, (afterwards the circuit court,) to issue executions into any district, (afterwards counties) “ where it hath been certified to such court that the defendant has no estate in the district” (or county) of venue. Geyer’s Dig. 267. Where the statute declares that a party may have an execution in conformity with his judgment, we do not understand it as restricting him to a single writ; for it is admitted that he may have as many executions as may be necessary to enable him to reap the fruits of his judgment; provided only one is out at a time. Nor does the phraseology of the eight section, which authorizes executions to issue to any county, lead to the inference that more than one was intended to be permitted to issue at a time upon the same judgment. On the contrary, under the act of 1807, before the court was authorized to issue an execution into any district or county, except the county of venue, it must be certified to such court that the defendant had no estate in the county of venue. The present law has so far modified this enactment as to permit the execution to issue to any county, without first issuing an execution to the county of venue. A comparison of the two laws, if it affords any argument at all, certainly furnishes one against the construction which would authorize more than one writ at a time.
The practice in this State, conforming itself to what, has been the general understanding of the profession, has been to issue only one writ at a time. This practice, we are assured by gentlemen whose experience at the bar reaches back for thirty years and upwards, has been coeval with the first organization of our territorial government, and uniformly been continued to the present day. This practice, it is true, has been of a negative character. It is not known that any attempt has been made to issue more than one writ at a time, and there is no adjudged case. But there must have been numerous cases in which such a course would have been very convenient, and would hardly have been overlooked, if the law had been supposed to authorize it. The absence of any attemptsto issue more than one writ, at the same time, during so long a period, is certainly a very strong indication that the opinion of the profession was against it.
The question as to what the English practice is, has been learnedly *267 diseussed in this case. We have not thought it necessary to investigate the subject, and most of the books of practice to which we have been referred are not accessible. The extracts from Tidd, Sellen, Archbold, Sec., to which reference has been made, would indicate pretty conclusively that the modern English practice is to issue-more than .one writ at a time to different counties. How far back this practice dates, we have not the means of ascertaining. From the manner in which these writs are issued, the second writ always reciting the first, like the testatum pluries, &c.,. of original or mesne process, I should infer that the theory of the English practice, like our own, and the primitive practice also, sanctions only one writ at a timeand that a writ did not issue to another county than the county of venue, until one had first issued to the county of venue. The practice is now in England for all these writs to issue at the same time. The supreme court of North Carolina, in the case of McNair vs. Ryland, (2 Dev. R. 42,) appear to have been satisfied, upon investigation, that the practice of suing out as many writs as the party thought proper, was well known in England, and the supreme court of Tennessee assert the same thing in Parish vs. Sanders & Marlin, (3 Humphry 431.) There-is no doubt that this practice prevails in New York, and was pursued there before the law expressly sanctioning it in the revised code of 1830. It is also the practice in some of the other states.
But the practice in England and in other states can have but little influence in determining the question which is presented ,by this record. We are not now to determine whether, if the clerk had issued the writs demanded, he would have acted illegally, or subjected himself to any penalty; nor whether it would have been error, had the court, of which he was clerk, under the circumstances, ordered the writs on the application of the plaintiff.' The case is very different. The clerk has simply declined to act in a case where the statute is silent; and the practice of his predecessors for forty years has been against such action. He was called upon to set a precedent on his own responsibility; to give a new reading to a statue without the interposition of the court, and against the opinion of the profession, who were interested in giving such a construction to the law. We should be very reluctant to believe that, under such circumstances, a ministerial officer is liable for damages. It would be abhorrent to our notions of equity, to visit a heavy penalty upon an officer for even committing an error under such circumstances. How is the officer to regulate his conduct with safety to himself and his securities, if, left without any plain injunction or prohibition of the statute, *268 he is still liable for inaction if the courts should think he might have acted, or for acting, if it should turn out to be the better opinion that such action was illegal.
We will not be understood as denying the liability of a ministerial officer for refusing to perform a duty plainly enjoined on him by law; nor do we think that, if the clerk had issued the writs demanded, he would have been liable. But as he declined to act, and, in so doing, followed in good faith the practice of his predecessors, we cannot see any legal ground for holding him responsible.
The other judges concurring, the judgment is affirmed.